JOSEPH T. GRANT & *als. versus* GEORGE N. BLACK.

Where the last call in a deed describing the territory in township No. 21 was from an undisputed point of departure, "thence southwesterly *by a line to be run* between townships number 21 and number 22 to the place of beginning;"—*Held*, that the call repudiated all former lines between the termini mentioned, and the *line to be run* must be the shortest distance between the points named.

And the subsequent clause, "according to a survey and plan of said township by P & D," will not control or modify the preceding language.

An instruction to the jury that another line admitted to have been run by the proprietors prior to the date of the deed to the plaintiffs, purporting to be the true line between townships 21 and 22, was the controlling monument answering the call, and that the point of departure must be rejected as inconsistent with the other and superior monument referred to in the deed, is erroneous.

ON EXCEPTIONS from *Nisi Prius*, CUTTING, J., presiding. TROVER for 1600 pine logs and 800 spruce logs.

The plaintiffs claimed that the logs were cut by the defendant on the eastern part of the north half of township No. 21, middle division, Hancock county.

The defendant alleged that the cutting in question was not on township No. 21 but upon No. 22, which he owned.

The question was as to the construction of the deed from Alexander Baring and others to James Grant, under whom plaintiffs claim as heirs. So much of the deed as is material will be found in the opinion.

The description can be readily understood by referring to the following diagram.

It appeared in evidence that one John Peters, in 1792, run a line for the proprietors, commencing at the N. E.

corner of township No. 15, thence northerly about six miles, coming to a "line running east," which spot he called, in his field notes, "northeast corner of No. 21." This "N. E. corner of No. 21" is about fifty-two rods west of the "south-west corner bounds of township No. 28."

The presiding Judge instructed the jury that much evidence had been introduced as to a line between 21 and 22, existing at the true date of the plaintiffs' deed, which would have been a fact for them to have considered, and of vital importance in the construction of the deed, had not that consideration been withdrawn from them by the admission of the plaintiffs' counsel in his argument, which was clearly authorized by the evidence, that one John Peters, for the proprietors, run a line in 1792, purporting to be the line between 21 and 22, as appears by his field notes. Whereupon the corner of township No. 28 being assumed in favor of the plaintiffs, and the Peters line proved and admitted to have been run as aforesaid, nothing remained but for the Court to construe the deed governed by those assumed and admitted monuments. And thereupon the Judge did instruct the jury that the Peters line was the controlling monument in answering the call in the deed; that the south-west corner of township No. 28 must be rejected as inconsistent with the other and superior monuments referred to in the deed; that the line could not be run from that corner, between townships No. 21 and 22, which as such was to be run without its rejection.

The verdict was for the defendant, and the plaintiffs excepted.

*Rowe,* for the plaintiffs.

*J. A. Peters,* for the defendant.

APPLETON, C. J.—On the 1st day of December, 1847, Alexander Baring and others conveyed to the plaintiffs' father the following described premises,—"a certain lot or parcel of land lying and being in the township number

Grant *v.* Black.

twenty-one, middle division, in the county aforesaid, (Hancock,) and State of Maine, numbered twenty-one, middle division, and butted and bounded as follows; viz., beginning at the northeast corner bounds of township No. 15, M. D., and running by said township westerly to the southeast corner bounds of township No. twenty, M. D., or Mariaville, thence northerly by said township No. twenty, or Mariaville, to the southwest corner bounds of township No. 27, M. D., or Aurora, thence easterly by said township No. 27, *to the southwest* corner bounds of township No. 28, M. D., thence *southwesterly by a line to be run between townships Numbers* 21 *and* 22, *M. D.*, to the place of beginning and containing twenty-three thousand and forty acres more or less, — the part of said township intended·to be conveyed by this deed is the north half thereof, reserving therefrom two lots of three hundred and twenty acres each for public uses in said town, three lottery lots containing eight hundred acres, and six lots of one hundred and sixty acres each, sold to settlers, having and containing nine thousand, one hundred and twenty acres more or less, *according to a survey and plan of said town by Peters and Dodge, surveyors, &c.* The line in controversy is that between No. 21 and No. 22.

The meaning and intention of the parties is to be ascertained from the grantors' deed. As the words are of their selection, the construction most favorable to the grantee is to be adopted.

The four corners of the township in question are undisputed. There is no controversy as to three of its sides. By the terms of the deed, the line from the S. W. corner of No. 28, M. D., (about which there is no doubt,) to the N. E. corner of No. 15, M. D. the point of beginning, is a *line to be run.* There might have been a line between No. 21, M. D. and No. 22, M. D., but if there was one, the grantors did not adopt it. They repudiated it. It was a line to be run. The grantee is so informed in and by his deed. There may be ever so many lines between these townships,

but none are to affect him. The point of departure is well ascertained. The point to be reached is equally well fixed. The line to be run must be the shortest distance between these two designated and established corners. The grantors owned the two townships, between which the divisional line was *to be* run. They had an unquestioned right to bound their grants by such limits as they might choose.

After the corners of the townships in the Bingham purchase had been established and the plan made, a line was run by John Peters in 1792, purporting to be the line between No. 21, M. D., and No. 22, M. D. This line the defendants claim to be the line between these townships. But this line was not between the N. E. corner of No. 15, M. D., and the S. W. corner of No. 28, M. D. It is fairly inferrible, from the language of the deed under which the plaintiffs claim, that the grantors therein were aware of the existence of the Peters line. They might, had they deemed it expedient, have affirmed the line run by Peters as the true one. Instead of adopting it, they distinctly and unequivocally ignore any existing line, by requiring one *to be run* from the last corner in the deed to the place of beginning, *by which line to be run* the grantee is specially bounded.

The plaintiffs' deed does not refer to any existing line between No. 21, M. D., and No. 22, M. D., but to one *to be run.* A line run and a line to be run are expressions materially different. The monuments between which the line is to be run are well defined and specially referred to. The line for which the defendant contends is not between these monuments, nor is it referred to. It is a line other than that described in the deed. The grantors of the plaintiff have defined the corners between which the line *is to be run,* and we have no authority to change or alter that line or to adopt a different one.

The adjacent township is owned by the defendant by a deed from the same grantors from whom the plaintiffs derive their title. It is bounded by a line identical with one "*to be run*" from the S. W. corner of No. 28, M. D., to the

N. E. corner of No. 15, M. D. The plan of the survey and location of the Penobscot Bingham purchase makes the line between No. 21 and No. 22 one and the same. There is no gore between them. The defendant's deed from the same grantors excludes the land in controversy from his grant.

The deed under which the plaintiffs claim refers to monuments. Those monuments are found on the face of the earth. They are not disputed. No reference is found in any deed to the Peters line as an existing line, but the reverse. The deed to Grant calls for a line *to be run*. It gives monuments between which the line is *to be run*. The line must be run between them. · The line between No. 21 and No. 22, as described in the deed to the defendant, is coincident with the line *to be run*. The monuments must govern.

The ruling of the Court repudiated the monuments to which the deed specially refers, and adopts a line which the deed does not recognize. The line in dispute, according to the ruling to which exception is taken, is obtained by running back on the preceding line fifty rods to a monument *not* referred to in the deed, and thence on the line between No. 21, M. D., and No. 22, M. D., to the place of beginning. The corner in the deed and the line *to be run*, according to the deed, to the place of beginning, and the course of the line are rejected; and preference is given to a corner and a course and a line, of which no mention is made in the deed.

This is the reverse of the manifest intention of the parties and is erroneous.

Nor does the last clause "according to a survey and plan of said town by Peters and Dodge" control or modify the construction given to the preceding language of the deed.

"The first deed and the last will shall operate" is an ancient maxim. 4 Cruise, 244. In accordance with this principle, *if* there be a contradiction between the call of the deed requiring a new line *to be run*, and the clause referring to the survey by Peters and Dodge, the former must prevail.

So the various parts of a deed should be so construed as to reconcile all seeming contradictions and to give effect, as far as may be, to each and every clause. Accordingly the line is *to be run* as first required, and, being run, the survey and plan are to govern as to the other lines.

This gives effect to all the calls, and is in conformity with the intent apparent in the whole deed, and that intent is to govern. *Exceptions sustained.*

DICKERSON, BARROWS and TAPLEY, JJ., concurred.

KENT, J., concurring. — Black or his principals owned both townships. He could deed as he pleased. He did deed by a line *to be* run between two fixed and unquestioned monuments.

At this time, as the case assumes, there was a line run by Peters in '92, as a line between 21 and 22. This was not the line laid down on Putnam's plan. It was not a line existing when the Commonwealth sold. The deed from the State and the plan bound all the towns on the lines and corners, and makes them all continuous, without any gores.

The line of Peters is not, therefore, an original dividing line, but a line run by the owner of the two townships, or by his direction. John Peters, sen'r, seems to have run but a part of the lines of several townships. It was not a line that *ipso facto* and by its own force established forever, and against all deeds, or determinations of the owner, a dividing line between the two townships.

It must be regarded, however, as an existing line on the face of the earth. And if the deed had said, by the dividing line between 21 and 22, this line might have controlled. But the deed does not say this. It seems, on the contrary, to carefully avoid any recognition of an existing line. After a careful examination of the deeds, it strikes me very forcibly that Col. Black did not intend to recognize this line of Peters, but to use language that would in effect exclude it as a monument. Because, 1. In his deed to Grant he starts

from a corner monument, fixed and now conceded to be cor-
rect, then he goes to next "corner bound of No. 20, run-
ning by line of township No. 15," then by line of No. 20
to "corner of No. 27," then on line of No. 27 to the S. W.
corner bounds of No. 28. These corners are undisputed.
But here he stops in following any line of townships or be-
tween towns. Why did he not say, then on line of 22, or
on the line between 21 and 22 as before? He simply says,
thence southwesterly by a line to be run between Nos. 21
and 22, to place of beginning, — i. e. to the monument first
named.

If there had been no Peters line, there could be no ques-
tion that the line *to be* run must be a straight line in a gen-
eral S. W. course to the first monument. The question is,
does the fact that there was a line on the earth run by a sur-
veyor, purporting to be and intended by him as the line be-
tween the towns, create or fix a monument, to meet which
the language of the deed must be construed against its man-
ifest import?

It is clear that Col. Black intended to start from and run
to the *corners* of the several towns named, and particularly
to the corner of No. 28. This corner is well established on
the face of the earth. Now the construction contended for by
defendant compels us either to stop short of that fixed,
named and manifestly designated monument, fifty rods or
more, where there is not and never has been any corner of
any township marked and recognized, and confessedly not the
corner of No. 28, or else to run to it, as the deed requires,
and then run back due west on the identical line just run
over as part of the boundary, the fifty rods, and there make
a corner, and then run at right angles with the last line to
first bounds. Thus making two lines, when but one is
called for, and taking back some fifty rods in length which
had just before been granted. And yet this is the claim
made by the counsel for the defendant in his argument.

2. The language of Col. Black's deed to defendant, which
was made subsequently, of the half of the adjoining town-

ship, is also marked by the same apparent intention of disregarding the Peters line. It begins, in the description of the boundaries, at the same corner, (of No. 28,) where the other deed terminated on the north line; it then runs on the line of 28 to the centre of the town, then on the centre line to a corner *on* the north line of No. 16, then to the S. W. corner of this township No. 21, which is fixed and undisputed. Here again the description by lines of townships stops, and the next line is given, not as the dividing line between 21 and 22, or as on the line of township No. 21, but simply, "thence northerly six miles to the bounds first mentioned." This last line must therefore be a straight line between these two monuments, the corner of 21 and 15, and the corner of No. 28, the first bound. It is exactly the same line as the one described in deed to plaintiff, to be run from corner of No. 28 to corner of No. 15.

Now, if the deed to the plaintiff is to be construed as limiting the land conveyed as $\frac{1}{2}$ of No. 22 by the Peters line, must not the deed to defendant be construed as carrying his line up to that line, leaving no gore or undeeded land. The Judge in this case properly said that the proprietors, whilst owners of both townships, might deed as they pleased and make any line or lines they pleased.

If, then, defendant's deed of No. 22 had been first in time, it would have become important to know whether that deed carried the line to the Peters line. If it did, then clearly no after deed or description could convey to another what had been conveyed to defendant.

If the plaintiffs' deed was earliest, then the question is, did that description limit the grant to the Peters line? If it did, and defendant's deed was subsequent, and if that deed does not go to the Peters line, (as seems to be admitted,) then there is a gore of land undisposed of, and the corners do not correspond with the corners named in the deed.

It seems to me that both deeds and all the deeds in the case may be examined to settle the point in question. It being granted that Col. Black might make exactly what line

he pleased, being owner of both, as and for the dividing line between 21 and 22, the question is what line did he choose, and make and designate?

Taking into consideration these deeds, it seems to me that Col. Black knew of this Peters line and his field notes; that he knew that he run a line across, but that he did not come out at or near the corner required to bring the lines together, according to the plans; that he did not, so far as appears, mark any corner, but speaks only of striking a line run before by his son; that he then returned and did nothing more about this line. Col. Black probably knew, by comparing this with other lines, that if it should be adopted as the established divisional line for all time, there would be inequality and difficulty in bringing the lines and corners to correspond, and that the corner of No. 28, which seems to have been carefully guarded and always recognized by him as a very particularly important monument and starting point, must be abandoned and a new and distinct corner of 21 and 22 created, some fifty rods westerly of his long cherished corner. He therefore determined to abide by the corners at all events, and to run beyond this assumed corner or end of Peters line, and fix the end of this northerly line at his old, well known corner of No. 28. He does so in express terms in his deed to plaintiff, and he starts from same corner in his deed to defendant. But how shall he run the line between this and the corner of No. 15, the starting point? If he says by the line between 21 and 22, or by line of 21, then a question may arise at once, what line? It cannot be by Peters' line, for that does not start from corner of No. 28, and you cannot get on to it, unless you run back and make a right angle as before explained. And yet it is the only line ever run on the face of the earth. I must, therefore, he says, at all events, use language that shall not recognize that line, for I know that that line will not make the division I intend. I will, therefore, distinctly indicate the line I intend, as one never yet run, but *to be* run on the basis and data I give; viz., from the fixed corner

of No. 28 to the fixed corner of 15. This is the line I choose, one I designate, and one I deed to and by. The same view and intention is manifest in the deed to defendant, and there is nowhere any evidence, that I see, that Col. Black ever did or ever intended to recognize this running by Peters as final and conclusive, but the contrary is established to my satisfaction.